# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Carlton H. Lawson, | : | Case No. 1:07CV2468 |
| Plaintiff | : | Judge Sara Lioi |
| v. | : | Magistrate Judge David S. Perelman |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claims for disability benefits, (DIB), 42 U.S.C. §§416, 423 and supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in his favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff's right to benefits under both programs is dependent upon a showing that he is disabled, as that term is defined in the Social Security Act. Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months."  42 U.S.C. §§423(d)(1), 1383c(a).  The programs differ with regard to other qualifying criteria.  The disability benefits statute requires "fully insured" status, which

focuses on the period of time the claimant has worked while covered by Social Security.  The SSI program focuses on income and resources as basic eligibility factors.

The plaintiff applied for benefits on February 26, 2004.  In his DIB application he claimed an onset date of November 24, 2003, but in the SSI application the onset date claimed was May 1, 1988.  While a Disability Report Adult form is normally completed along with an application in this case that form carries a printing date of June 3, 2006.[1]  Therein November 24, 2003 is stated to be the date plaintiff's disability began, that date being one month after the plaintiff was laid off from his last job.  In that form the question "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work" were answered "Heart problems/reading level 1st to 3rd grade/cannot write more than a few words in English[2]/bad knees/ left wrist injured/gout/back problems/hearing problems/vision problems" and "Have trouble getting up from sitting position/back pain wakes me at night/when I have a flare up with my gout—can't get shoes on/pain on occasion in my left knee."

Upon denial of plaintiff's claims on the state agency level hearing de novo before an Administrative Law Judge (hereinafter ALJ) was requested.  Evidentiary hearing, at which plaintiff was represented by counsel, was held on October 10, 2006.  Also testifying at that proceeding was a vocational expert, Ms. Carol Mosley.

At that hearing the plaintiff testified that when he lost his job he was told that it was because of a reduction in force, but that he believed "[T]hey got rid of me because of my medical problems.

---

[1] The form does not have an entry in the box identifying the person who completed the form nor in the box stating the date completed.  It does, however, have the plaintiff's address below those two boxes.

[2] Considering that the plaintiff is functionally illiterate it must be that someone else filled in the form based upon information provided by the plaintiff.

They didn't come right out and say that, but they also got rid of some other people because of the medical problems they had." The ALJ then asked the plaintiff would he still be working if his job had not been eliminated, to which the plaintiff responded:

>   A. Probably not.
>
>   Q. Why not?
>
>   A. Because I was—before I got let go I was having a lot of problems and I was missing a lot of work.
>
>   Q. And what were the problems?
>
>   A. Heart related, having problems with my knees, back problems, stuff like that.
>
>   Q. When you say you were missing a lot of work, what do you mean by a lot of work?
>
>   A. Well, sometimes it'd be two, three, four days at a time. And I would never be able to go a whole month without missing two, three, four, five days.

When asked by his counsel whether his condition was "staying the same or was it getting worse with time when you stopped working?" he stated "It was getting worse" in the respect that he was having more problems with an irregular heart beat. He was then asked what effect that problem had upon him, and he answered:

>   A. It usually makes me feel bad for two or three hours.
>
>   Q. When you say makes you feel bad, what kind of bad feeling does that give you?
>
>   A. Just makes me feel kind of like sick, feeling—I just don't feel like doing much afterwards.
>
>   Q. When you say sick, do you mean sick to your stomach or sick in another way?

      A.      Yeah, sick to your stomach and just makes you feel bad.

At the outset of the hearing plaintiff's counsel submitted to the ALJ a "Cardiac Residual Functional Capacity Questionnaire" completed six days earlier by the plaintiff's long time treating physician, Dr. Charles D. O'Shaughnessy. Therein the doctor stated he had seen the plaintiff "every 2-6 months since at least 1/98." In the course of examining Ms. Mosley plaintiff's counsel inquired on the question of the effect of taking four or more unscheduled absences from work a month on an individual's ability to hold an unskilled entry level job, and she indicated for those types of jobs "punctuality and attendance and all those things are important because they know they can be easily replaced."

Under date of October 10, 2006, but obviously following the hearing because as it was referenced, plaintiff's counsel wrote the ALJ a letter presenting his position as to why the plaintiff should be deemed disabled. Therein he stated:

> **MEDICAL EXPERT IS REQUESTED TO EVALUATE
> CARDIO-VASCULAR RECORDS**
>
> If Your Honor is unable to render a favorable decision based on the available evidence, please consult with a medical expert who has expertise in cardiology. There is no one more qualified than Dr. O'Shaughnessy to interpret the highly technical cardiology records in the file. However, if Your Honor is not willing to adopt Dr. O'Shaughnessy's opinion, it is possible that a medical expert will find that the claimant equals a listing or at least that the records reasonably support Dr. O'Shaughnessy's RFC restrictions.

On November 22, 2006 the ALJ entered his decision rejecting the plaintiff's claims, which stand as the defendant's final determination consequent to denial of review by the Appeals Council on June 12, 2007. The headings on the ALJ's Findings of Fact and Conclusions of Law were:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since November 24, 2003, the alleged onset date (20 CFR 404.1520(b), 505.2672 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: status post several cardiac surgical procedures including mitral valve replacement and a pacemaker insert in 2005, obesity, borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift 10 up to 10 pounds frequently and up to 20 pounds maximum occasionally. He needs simple, repetitive, non complex tasks. He needs low stress work with no high production pace activity. He cannot work around unprotected heights.

6. The claimant is capable of performing past relevant work as a machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act., from November 24, 2003 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

On this appeal two issues are raised, the first of which this Court considers to be of merit. It focuses on Dr. O'Shaughnessy's report and the ALJ's cavalier treatment thereof.

In this Court's opinion Dr. O'Shaughnessy's report plainly supports the plaintiff's claim of disability. Therein the doctor stated his diagnosis of the plaintiff as suffering from "PAF; SSS; hyperlipidemia valvular heart disease status post aortic mitral valve replacement 1988 with mitral valve repair 6/05, 10/05 pacemaker." He identified "the clinical findings, laboratory and test results that show your patient's medical impairments" as "2-3/6 systolic murmur across the precardium.

5

EKG reveals A fib [atrial fibrillation]" (emphasis added). He responded "Yes" to the question "Does your patient have marked limitation of physical activity as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though patient is comfortable at rest?" Most importantly, the doctor stated that during an 8-hour work day the plaintiff would have to take unscheduled breaks every two hours that would last on average of 15 to 30 minutes, during which the plaintiff would need to lie down or sit quietly, and estimated that the plaintiff's medical problems would cause him to be absent from work "more than four days per month."

The only reference in the ALJ's decision to Dr. O'Shaughnessy's report was:

> Dr. O'Shaughnessy completed an assessment of claimant's residual functional capacity on October 4, 2006 (Exhibit 19F). he said the claimant could do a low stress job. His cardiac difficulties would occasionally cause problems with concentration. He said claimant can sit for 6 hours in an 8 hour day. The claimant can stand/walk for less than 2 hours in an 8 hour day. He needs to take breaks every 2 hours. Claimant can occasionally lift 10 pounds and rarely lift upon to 20 pounds. Claimant's legs need to be elevated with prolonged sitting for approximately 50% of the work day. He said claimant would miss work more than four [days] a month. Additional non-exertional limits were cited (Exhibit 19F). Dr. O'Shaughnessy listed claimant's condition but does not explain how these can cause claimant's limits.
>
> Exhibit 8E[3] was received after the hearing and has been considered by the undersigned. The limits cited by Dr. O'Shaughnessy are apparently based on the allegations of the claimant. Dr. O'Shaughnessy did not list the claimant's New York Heart Association classification on his questionnaire, despite a specific request for this information (Exhibit 19F, p. 2).

This Court is at a total loss to understand the ALJ's statement that "The limits cited by Dr.

---

[3]Exhibit 8E is counsel's letter of October 10, 2006.

O'Shaughnessy are apparently based on the allegations of the claimant," considering that in his report the doctor set out his diagnostic findings and the objective medical evidence he considered pertinent thereto. This Court is equally puzzled by the reference to the absence of "the claimant's New York Heart Association classification," as there is no competent medical evidence in this record as to what that classification is and/or what the significance of it might be.

The simple fact is that this Court finds no rational basis for the ALJ's rejection of the conclusions of Dr. O'Shaughnessy, who had been treating the plaintiff for over eight years at the time he completed the questionnaire.

As was recently reiterated in Howard v. Commissioner of Social Security, 276 F.3d 235, 240 6 (6th Cir. 2002), citing to Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985), while it is often said that the opinion of a treating physician on the ultimate issue of disability is not binding, see, Le Master v. Weinberger, 533 F.2d 337 (6th Cir. 1976) that is not always the case. In King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) the court stated the controlling rule to be "Indeed, it has long been the law that substantial deference--and, if the opinion is uncontradicted, complete deference--must be given to such opinions and diagnoses." See also, Colwell v. Gardner, 386 F.2d 56, 72 (6th Cir. 1967); and Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967).

To be entitled to significant weight the conclusory opinion of a treating physician must be supported by clinical or diagnostic findings. Kirk v. Secretary of Health and Human Services, 667F.2d 524, 538 (6th Cir. 1981). However, it is not necessary that such supporting detail be contained in the same document in which the physician's opinion is expressed. It is sufficient if that opinion is supportable by other medical evidence in the record, including clinical or diagnostic findings of other physicians. See, Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984).

In this Court's opinion, the foregoing principles apply to this case, and call for reversal of the defendant's final determination.

Combining Dr. O'Shaughnessy's conclusions with Ms. Mosley's testimony that a functionally illiterate individual limited to entry level unskilled work who would be absent with the frequency and/or require breaks of the nature projected by the doctor would not be employable, it follows that final judgment should be entered in the plaintiff's favor.[4]

It is, accordingly recommended that final judgment be entered in plaintiff's favor finding that he was disabled as of his claimed onset date of November 24, 2003 and entitled to an award of DIB based thereon, and remanding his SSI claim for determination of his entitlement to those benefits based upon the applicable economic criteria.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   June 2005, 2008

### OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[4]If Your Honor disagrees with this conclusion, at the very least the matter should be reversed and remanded for further proceedings, to receive testimony from a medical expert (or experts if it would be appropriate to have one testify on the subject of the plaintiff's exertional limitations and another to address his non-exertional limitations).